Steven L. KILPATRICK, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S00–0003–CR–185.

Supreme Court of Indiana.

April 11, 2001.

Sarah L. Nagy, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

After a trial by jury Steven L. Kilpatrick was convicted of murder, attempted robbery as a Class A felony, aggravated battery as a Class B felony, and criminal gang activity as a Class D felony for his role in the stabbing death of Edward Crafter. In this direct appeal Kilpatrick raises twelve issues for our review which we consolidate, reorder, and rephrase as follows: (1) did the trial court err by admitting certain exhibits into evidence, (2) did the trial court err in giving certain jury instructions, (3) was Kilpatrick denied his right to confront witnesses when his co-defendant moved for a directed verdict arguing that Kilpatrick inflicted the fatal injury, (4) do Kilpatrick's convictions violate the Double Jeopardy Clause of the Indiana Constitution, (5) is the evidence sufficient to sustain his convictions, and (6) was Kilpatrick properly sentenced. We reverse Kilpatrick's conviction for criminal gang activity on sufficiency of the evidence grounds. In all other respects, we affirm.

### Facts

The facts most favorable to the verdict show that in the evening hours of January 14, 1999, a group of men attacked and beat Edward Crafter. His body was found in a field the following morning. At least four of the men were charged in connection with Crafter's death, one of whom was Tommy Thompson. In exchange for his testimony, the State dismissed charges against Thompson for murder, robbery, and criminal gang activity and allowed him to plead guilty to aggravated battery. At trial, Thompson downplayed his own in-

volvement in Crafter's death and instead blamed Kilpatrick and another accomplice, Craig Ferrell, who was tried along with Kilpatrick as a co-defendant.[1] Thompson testified, for example, that he observed Kilpatrick strike Crafter in the head with a chunk of ice and that as Crafter lay on the ground Ferrell and Kilpatrick searched Crafter's pockets. He also testified that sometime thereafter he observed Ferrell and Kilpatrick dragging Crafter through the street; that Kilpatrick stabbed Crafter multiple times in the neck and that Ferrell stabbed him in the chest; and that both Ferrell and Kilpatrick dragged Crafter's body into some bushes. Another witness also testified that she observed Kilpatrick strike Crafter in the head with a large chunk of ice and that Kilpatrick searched Crafter's pockets as he lay on the ground. An autopsy revealed that in addition to abrasions and contusions to his face, Crafter suffered an injury to the back of his head consistent with being struck with a large block of ice. The autopsy also revealed that Crafter died as a result of multiple stab wounds. A jury convicted Kilpatrick of murder, attempted robbery, aggravated battery, and criminal gang activity. The trial court sentenced him to an aggregate term of 110 years imprisonment.[2] This appeal followed. Additional facts are set forth below where relevant.

### Discussion

### I. Admission of Exhibits

Kilpatrick contends the trial court erred by admitting certain exhibits into evidence. He first complains about State's Exhibit 39, a photograph of the victim taken prior to the autopsy showing multiple stab wounds and a great amount of blood. According to Kilpatrick, the photograph is gruesome, cumulative of other photographs introduced into evidence, and served no purpose other than to inflame the passions of the jury. We review the trial court's admission of photographic evidence for an abuse of discretion. *Byers v. State*, 709 N.E.2d 1024, 1028 (Ind.1999). Photographs that depict a victim's injuries are generally relevant and thus admissible. *Harrison v. State*, 699 N.E.2d 645, 647 (Ind.1998). The relevancy requirement also can be met if the photographs demonstrate or illustrate a witness's testimony. *Id.* However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Ind.Evidence Rule 403; *Wallace v. State*, 725 N.E.2d 837, 839 (Ind. 2000).

The photograph here was admitted into evidence after the pathologist had explained the nature of Crafter's injury, namely multiple stab wounds, which was accompanied by significant bleeding, resulting in death. Because the photograph illustrated the witness's testimony, the relevancy requirement for its admission was properly met. As for alleged prejudicial impact, we do not agree the photograph is particularly gruesome. Indeed, because the photograph was taken before the pathologist actually began his internal examination, it shows no incisions and does not portray the gruesome spectacle this Court has previously condemned. See, e.g., *Turben v. State*, 726 N.E.2d 1245, 1247 (Ind.

---

1. Today, we also decide the case of co-defendant Craig Ferrell. *Ferrell v. State,* 746 N.E.2d 48 (Ind.2001).

2. Specifically, the trial court sentenced Kilpatrick to consecutive terms of sixty-five (65) years for murder and forty-five (45) years for attempted robbery. The court also sentenced Kilpatrick to twenty (20) years for aggravated battery and three (3) years for criminal gang activity but merged these sentences into the sentence for attempted robbery.

2000) (deeming an autopsy photograph of gloved hands manipulating a bloody mass with a probe so gruesome as to be inadmissible); *Kiefer v. State*, 239 Ind. 103, 112, 153 N.E.2d 899, 902 (1958), (deeming photographs so "gruesome and shocking" as to be inadmissible), reh'g denied. It is true that photographs of a deceased victim during and after an autopsy is performed may be held inadmissible on the ground that they serve no purpose other than to arouse the emotions of the jury. *Loy v. State*, 436 N.E.2d 1125, 1128 (Ind.1982). However, this Court has found photographs showing the deceased victim before the pathologist has made incisions to be admissible even when they are gruesome or gory. *Id.* That is so because such photographs allow the jury to see the wounds or trauma inflicted upon the victim, and they are often accompanied by the testimony of the pathologist about the cause of death. *Id.* Here, the pathologist testified about the cause of death and the photograph allowed the jury to see the wounds and to place the pathologist's testimony in context. The probative value of the photograph outweighs any prejudicial impact. Concerning Kilpatrick's argument that the photograph was cumulative, we observe that relevant evidence need not be excluded simply because it is cumulative. *Wagner v. State*, 474 N.E.2d 476, 490 (Ind. 1985). The trial court did not err by allowing the photograph into evidence.

■ Kilpatrick also complains about the introduction of photographs taken of him at the time of arrest showing several tattoos on his arms and chest. A detective assigned to the Metro Gang Task Force testified that the tattoos were the symbols of a street gang known as the Vice Lords. Kilpatrick argues that even if relevant to the charge of criminal gang activity, the photographs' prejudicial impact outweighed their probative value. Kilpatrick

is mistaken. However, as explained in greater detail elsewhere in this opinion, we reverse his conviction for criminal gang activity. Therefore, we decline to address further the propriety of the trial court admitting the photographs into evidence.

■ Finally, Kilpatrick complains the trial court erred by admitting into evidence his check-cashing card and photo ID. Both items were recovered from the home of Yolanda Coffee; the location where the fight first erupted between Crafter and Kilpatrick. He claims the exhibits were not relevant and that the State failed to lay a proper foundation for their introduction into evidence. A proper foundation for the introduction of physical evidence is laid if a witness is able to identify the item and the item is relevant to the disposition of the case. *Bell v. State*, 610 N.E.2d 229, 233 (Ind.1993). Here, although Coffee did not discover the items herself, a relative discovered them between the pillows of a couch in Coffee's home, Coffee was present when the items were found, she is acquainted with Kilpatrick, and she was able to identify the items. R. at 294–96.

■ As for relevancy, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The record shows that prior to trial, Kilpatrick filed a notice of alibi contending that he was home on the night of the stabbing. R. at 92. The State contends the items were thus relevant to show Kilpatrick's presence at the home of the witness on the night of the crime. The problem however is that the witness discovered the disputed items some five months after the fatal stabbing and testified that Kilpatrick had visited her home "quite a few" times. R. at 287, 295. And there was no

evidence presented that the last time he was present at her home was on the night in question. At best, Kilpatrick's photo ID and check-cashing card are only marginally relevant to the question of whether Kilpatrick was present at or near the crime scene when Crafter was killed. Even so, Kilpatrick was not harmed by the admission of the exhibits because a number of witnesses placed Kilpatrick at the scene on the night of the murder. Any error in admitting evidence will be found harmless where evidence is merely cumulative. *Borders v. State*, 688 N.E.2d 874, 878 (Ind. 1997).

## II. Jury Instructions

Kilpatrick's complaint about jury instructions is somewhat attenuated. On the one hand, he complains that the trial court's reasonable doubt instruction, sanctioned by this Court in *Winegeart*, is erroneous. *See Winegeart v. State*, 665 N.E.2d 893 (Ind.1996). He acknowledges that he did not object to the instruction but attempts to avoid waiver by arguing fundamental error. He also invites this Court to revisit *Winegeart*. On the other hand, he argues he is not seeking reversal based on the trial court giving the *Winegeart* reasonable doubt instruction but "seeks [ ]

reversal based upon the six defective instructions to which were objected by trial counsel and which incorporated the 'reasonable doubt' concept in each." Br. of Appellant at 19–20.

■■■ Kilpatrick's attempted end-run at arguing error in the reasonable doubt instruction is unavailing. The record shows that his objection at trial to the six instructions he now mentions on appeal was not based on the fact they included the term "reasonable doubt." Rather, Kilpatrick objected to five of the instructions on the ground that they contained permissive language.[3] R. at 775–81. He objected to a sixth instruction on a similar ground.[4] R. at 783. A defendant may not raise one ground for an objection at trial and then argue a different ground on appeal. *Simmons v. State*, 714 N.E.2d 153, 155 (Ind.1999). This issue is waived for review unless fundamental error occurred. It did not.[5]

## III. Right of Confrontation

■■■ Kilpatrick next complains that he was denied his Sixth Amendment right of confrontation. The facts are these. After the State rested, the jury was excused and each of the co-defendants moved for directed verdict. Concerning the charge of

---

3. The instructions involved the elements of murder, robbery, attempted robbery, criminal gang activity, and evidence of other crimes, respectively. R. at 131–38, 142. Kilpatrick objected to that portion of the instructions that provided "if the State failed to prove each of these elements beyond a reasonable doubt, you *should* find the defendant not guilty." *Id.* (emphasis added). Kilpatrick argued the word "should" in each of the instructions ought to be replaced with the word "may." The trial court overruled the objection.

4. Kilpatrick objected to the instruction that provided, "If after considering all of the evidence . . ., you should acquit even if you find the accused was guilty of misbehavior . . . ." R.

at 150. Kilpatrick argued the word "should" ought to be replaced with the word "must." The trial court overruled the objection.

5. Also, we have approved of the *Winegeart* instruction on numerous occasions and decline Kilpatrick's invitation to revisit it here. *See Albrecht v. State*, 737 N.E.2d 719, 731 (Ind.2000); *McGregor v. State*, 725 N.E.2d 840, 842 (Ind.2000); *Warren v. State*, 725 N.E.2d 828, 834 (Ind.2000); *Turnley v. State*, 725 N.E.2d 87, 89 (Ind.2000); *Dobbins v. State*, 721 N.E.2d 867, 874–75 (Ind.1999); *Ford v. State*, 718 N.E.2d 1104, 1105 (Ind. 1999); *Barber v. State*, 715 N.E.2d 848, 851–52 (Ind.1999); *Young v. State*, 696 N.E.2d 386, 390 (Ind.1998).

aggravated battery, counsel for Craig Ferrell argued, among other things, that Kilpatrick, and not his client, caused the victim's injuries. In this appeal, Kilpatrick claims he was denied the right to confront a witness against him because "[t]his tactic taken by Ferrell's counsel in the middle of the trial had the same impact as the admission of an extrajudicial statement of a non-testifying co-defendant at a joint trial." Br. of Appellant at 36.

■ We first observe that Kilpatrick's assertion that counsel's comments occurred in "the middle of the trial" is obviously misleading. The assertion was made at the close of the State's case and outside the presence of the jury. In any event, a defendant's Sixth Amendment right of confrontation requires that a defendant be afforded the opportunity to conduct effective cross-examination of the State's witnesses in order to test their believability. *Meagher v. State*, 726 N.E.2d 260, 264 (Ind.2000). This right of confrontation "extends to situations related to the presentation of witnesses or evidence, during which the right of cross-examination is implicated." *Robinson v. State*, 699 N.E.2d 1146, 1150 (Ind.1998). In this case, counsel for Ferrell was not a witness and his argument for directed verdict was not evidence. There is no Sixth Amendment violation here.

### IV. Violations of Double Jeopardy

■ Kilpatrick next argues that his conviction and sentencing for murder and attempted robbery as a Class A felony violates Indiana's double jeopardy clause. Specifically, he contends that the evidentiary facts used by the jury to elevate the charge of attempted robbery to a Class A felony are the same as the evidentiary facts used to establish the elements of murder. We disagree.

■ The double jeopardy rule prohibits multiple punishments for the same offense. In *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), this Court developed a two-part test for determining whether two convictions are permissible under Indiana's double jeopardy clause. *Id.* at 49. A double jeopardy violation occurs when " 'the State ... proceed[s] against a person twice for the same criminal transgression.' " *Hampton v. State*, 719 N.E.2d 803, 809 (Ind.1999) (quoting *Richardson*, 717 N.E.2d at 49). "[T]wo or more offenses are the 'same offense' ... if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49 (emphasis in original). When we look to the actual evidence presented at trial, we will reverse one of the convictions if there is "a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

Kilpatrick asserts the same evidence—stabbing of Crafter—was used to support Kilpatrick's murder conviction and the serious bodily injury element in the attempted robbery conviction. However, both the evidence and the jury instructions, which included the charging information, clearly show that different evidence—blunt force trauma to Crafter's head with a block of ice causing severe brain damage—was used to support the serious bodily injury element for the attempted robbery charge. Thus, application of the actual evidence test discloses that convicting and sentencing Kilpatrick on both offenses does not violate the Indiana Double Jeopardy Clause.

Kilpatrick further contends that his convictions for attempted robbery, aggravated battery, and criminal gang activity also violate Indiana's double jeopardy clause. As indicated earlier, and as discussed in greater detail below, we reverse Kilpatrick's conviction for criminal gang activity. Therefore for purposes of this analysis, the conviction for criminal gang activity is not a part of the equation. As for the remaining offenses, it is true that the same evidence—hitting Crafter with a block of ice—was used to prove both attempted robbery and aggravated battery. However, the trial court merged the aggravated battery conviction into the conviction for attempted robbery.[6] We have held that where a trial court merges some offenses into others for purposes of sentencing, there is no double jeopardy violation. This is so because under those circumstances the defendant is not being punished for the merged offenses. *Buchanan v. State*, 699 N.E.2d 655, 656 (Ind. 1998) (declaring that "[n]o double jeopardy issue exists" where the trial court merged convictions for criminal confinement and carjacking into a conviction for kidnapping, leaving the defendant subject to punishment for the remaining kidnapping and robbery convictions). Because Kilpatrick is not being subjected to punishment for his conviction of aggravated battery, his double jeopardy claim fails.

### V. Sufficiency of the Evidence

Kilpatrick does not contest his conviction for aggravated battery. He contends, however, that his convictions for murder, attempted robbery, and criminal gang activity are not supported by sufficient evidence. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of witnesses. *Brown v. State*, 720 N.E.2d 1157, 1158 (Ind.1999). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

Kilpatrick's chief complaint concerns the testimony of Tommy Thompson. Contending that Thompson was the only witness to testify concerning the murder and attempted robbery, Kilpatrick argues that Thompson's testimony "is impossible to believe, and is insufficient to support a conviction." Br. of Appellant at 28. Kilpatrick's claim amounts to an invocation of the "incredible dubiosity rule." Under this rule, a court will impinge upon the jury's responsibility to judge witness credibility only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of

---

**6.** We acknowledge the considerable case authority declaring that vacating an offense as opposed to merging it is appropriate at least in those instances involving lesser-included offenses. *See, e.g., Mason v. State*, 532 N.E.2d 1169, 1172 (Ind.1989) (remanding to the trial court with instructions to vacate the defendant's conviction for possession of a narcotic drug as a lesser-included offense of dealing); *Cohen v. State*, 714 N.E.2d 1168, 1180 (Ind. Ct.App.1999) (acknowledging the trial court's uses of "merger" but holding "where a defendant is found guilty of both the greater offense and the lesser-included offense, the trial court's proper procedure is to vacate the con-

viction for the lesser-included offense and enter a judgment of conviction and sentence only upon the greater offense."), *trans. denied. See also Webster v. State*, 708 N.E.2d 610, 616 (Ind.Ct.App.1999), *trans. denied; Taflinger v. State*, 698 N.E.2d 325, 327 (Ind.Ct.App.1998); *Redman v. State*, 679 N.E.2d 927, 932 (Ind.Ct. App.1997), *trans. denied; Johnson v. State*, 659 N.E.2d 242, 246 (Ind.Ct.App.1995); *Abron v. State*, 591 N.E.2d 634, 637 (Ind.Ct. App.1992), *trans. denied.* We leave for another day a discussion concerning the continued viability of the foregoing rule. We note however that this case does not involve merger of a lesser-included offense.

incredible dubiosity. *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994); *Gaddis v. State*, 253 Ind. 73, 80–81, 251 N.E.2d 658, 661–62 (1969). "Application of this rule is limited to cases, such as *Gaddis*, where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Tillman*, 642 N.E.2d at 223.

■ In this case, Thompson testified that he arrived on the scene after a fight between Crafter and several other men had begun and that he hit Crafter only once. R. at 342, 346. By contrast, two other witnesses testified that Thompson participated more actively in the beatings. R. at 274, 457. Thompson testified that Ferrell and Kilpatrick beat Crafter but did not mention anyone else. R. at 344. On the other hand, other witnesses testified that four or five persons participated in the beating. R. at 272–73, 425. No witness other than Thompson testified that Kilpatrick stabbed Crafter; however, no blood was found on Kilpatrick's clothing, which according to Kilpatrick, one might expect given the tremendous amount of blood that Crafter lost. On this latter point, the record shows the clothing that was tested for bloodstains was clothing Kilpatrick wore at the time of his arrest three weeks after the stabbing. R. at 541, 562, 649. Further, Thompson as well as another State's witness testified that on the night of the stabbing Kilpatrick removed the clothes he was wearing and placed them in a trash bag. R. at 376, 449–50.

■■ In any event, although Thompson's testimony was inconsistent in several respects with the testimony of other witnesses, it was not equivocal and Thompson did not contradict himself on the stand. Rather, the record shows that even though Kilpatrick thoroughly cross-examined Thompson, he nonetheless stuck by his account of the events occurring on the night of the fatal stabbing. R. at 380–86. *See Berry v. State*, 703 N.E.2d 154, 160 (Ind.1998) (declining to apply the "incredible dubiosity rule" where there were inconsistencies in the testimony among witnesses but no one witness contradicted himself). Further, in addition to Thompson's testimony, one other witness testified that Kilpatrick went through Crafter's pockets after knocking him to the ground with a block of ice. R. at 275–76. It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve. *Marshall v. State*, 621 N.E.2d 308, 320 (Ind.1993). If the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb it. *Id.* In this case the jury apparently believed Thompson's testimony. His testimony coupled with the testimony of other witnesses was sufficient to support a guilty verdict for murder and attempted robbery. We therefore affirm Kilpatrick's convictions for these offenses.

■ We have a different view, however, concerning Kilpatrick's conviction for criminal gang activity. In order to convict a defendant of criminal gang activity, the State must prove beyond a reasonable doubt that the individual: (1) is an active member of a group with five or more members which promotes, sponsors, assists in, participates in, or requires as a condition of membership or continued membership the commission of a felony or an act that would be a felony if committed by an adult, (2) has knowledge of the group's criminal advocacy, and (3) has a specific intent to further the group's goals. *See* Ind.Code §§ 35–45–9–1, –3.

The State presented substantial evidence that Kilpatrick was a member of a

gang: an acquaintance testified Kilpatrick was a member of the Vice Lords gang, R. at 333–35; a patrolman with the Indianapolis Police Department testified he had previously completed a gang contact sheet on Kilpatrick based on known associates, colors, and tattoo identifiers indicating gang affiliation, R. at 670; and a detective assigned to the Metro Gang Task Force testified concerning Kilpatrick's affiliation with the Vice Lords, basing his opinion on the number, type, and location of tattoos on Kilpatrick's body. R. at 713. The State also linked the Vice Lords gang to criminal activity. R. at 703.

■■■ To sustain a conviction under a sufficiency of the evidence challenge, there must be sufficient evidence on each material element. *Grace v. State*, 731 N.E.2d 442, 445 (Ind.2000), *reh'g denied.* Here, the State presented no evidence that Kilpatrick had the specific intent to further the gang's criminal goals when he stabbed and attempted to rob Crafter. The State's case consisted only of evidence that Kilpatrick was a member of a gang that commits criminal offenses. That is not enough. *See Robinson v. State*, 730 N.E.2d 185, 195 (Ind.Ct.App.2000), *trans. denied; Trice v. State*, 693 N.E.2d 649, 651 (Ind.Ct.App.1998) (both reversing convictions for criminal gang activity where the State failed to show a nexus between the defendants' gang membership and the crimes for which they were charged.). We thus conclude the evidence was not sufficient to support Kilpatrick's conviction for criminal gang activity. Therefore, we are compelled to reverse this conviction.

## VI. Sentencing

Finding three aggravating factors and no mitigating factors, the trial court sentenced Kilpatrick to enhanced and consecutive terms of imprisonment. Specifically the trial court found as aggravating factors: (1) the nature and circumstances of the crimes, (2) Kilpatrick's prior criminal history, and (3) the "victim's family has requested that the maximum sentence be imposed." R. at 871. Kilpatrick does not contest the trial court's findings. Rather, he complains the trial court failed to provide separate reasons for enhancing his sentences and failed to articulate reasons for running the sentences consecutively.

■■■ We observe *sua sponte* that although recommendations by a victim's family "may properly assist a court in 'determining what sentence to impose for a crime,'" they " 'are not mitigating or aggravating factors as those terms are used in the sentencing statute.' " *Brown v. State*, 698 N.E.2d 779, 782 (Ind.1998) (quoting *Edgecomb v. State*, 673 N.E.2d 1185, 1199 (Ind.1996)). In any event, when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist. *Walter v. State*, 727 N.E.2d 443, 448 (Ind. 2000). The manner in which a crime is committed may serve as an aggravating circumstance. *Taylor v. State*, 695 N.E.2d 117, 120 (Ind.1998). The same is true for a defendant's criminal history. *Culver v. State*, 727 N.E.2d 1062, 1072 (Ind.2000), *reh'g denied.*

■■■ The decision to enhance a presumptive sentence or to impose consecutive sentences for multiple offenses is generally within the trial court's discretion. *Brown*, 698 N.E.2d at 781. A single aggravating factor may be sufficient to support an enhanced sentence. *Garrett v. State*, 714 N.E.2d 618, 623 (Ind.1999). And the same factors may be used to enhance a presumptive sentence and to justify consecutive sentences. *Miller v. State*, 716 N.E.2d 367, 371 (Ind.1999). We reject Kilpatrick's claim that the trial court is required to identify the factors that support the sentence enhancement sepa-

rately from the factors that support con-secutive sentences. *Blanche v. State*, 690 N.E.2d 709, 716 (Ind.1998). We also reject his claim that the trial court is required to identify separate factors to support each sentence enhancement. *Id.* at 715 (finding a single aggravator suffices to support en-hanced sentences for attempted murder, carrying a handgun without a license, and resisting law enforcement convictions); *Williams v. State*, 690 N.E.2d 162, 172 (Ind.1997) (finding same three aggravators justified enhanced sentences for murder and conspiracy to commit murder). In sum, Kilpatrick's challenge to his sentence fails.

### Conclusion

We reverse Kilpatrick's conviction for criminal gang activity. In all other re-spects, the judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.