## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 15 2016, 9:48 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Brooke N. Russell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Prosecuting Attorney
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

B.N.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

March 15, 2016

Court of Appeals Case No.
49A02-1507-JV-771

Appeal from the Marion Superior
Court

The Honorable Marilyn A.
Moores, Judge

The Honorable Geoffrey Gaither,
Magistrate

Trial Court Cause No.
49D09-1411-JD-2791

**Najam, Judge.**

# Statement of the Case

[1] B.N. appeals his adjudication as a delinquent for child molestation, as a Level 4 felony when committed by an adult. B.N. raises a single issue for our review, which we restate as whether the State presented sufficient evidence to support B.N.'s adjudication as a delinquent. We affirm.

# Facts and Procedural History

[2] From approximately May 11, 2011, to September 23, 2014, S.P. babysat J.N. on the weekends. J.N. was six- and seven-years old during that period of time. S.P.'s teenaged son, B.N., lived with her. The house was small, consisting of two bedrooms, a living room, and a kitchen. While either S.P. or J.R.— another adult living in the home—were in the house the majority of the time, there were times when S.P. or J.R. were not in the household when J.N. and B.N. were there.

[3] At various times, B.N. made J.N. "suck [B.N.'s] private parts," and B.N. put "his private parts in [J.N.'s] butt," which J.N. refers to as "humping." Tr. at 10. J.N. stated these events took place in both B.N.'s bedroom and a shed on the property, and these acts occurred almost every time J.N. was at S.P.'s house. At one point, Ju.R., another child living in the home and J.N.'s friend, saw B.N. and J.N. go into the shed together.

[4] All those events made J.N. feel "[u]ncomfortable*." Id.* B.N. told J.N. not to tell anyone of those events, and J.N. did not reveal the acts to an adult for some

time because he felt "scared" and "thought [B.N.] really might mean it" in terms of carrying out the threats against J.N.  Tr. at 15.

[5]  On September 23, 2014, after Jessica Madeiros, an Abuse Program Specialist/Child Forensic Interviewer for the Indianapolis Metropolitan Police Department, presented a Body Safety Program at J.N.'s school, J.N. indicated that he wanted to talk to Madeiros.  The following day, J.N. told Madeiros that, on the previous Friday, B.N. had "put his penis inside of J.N.'s butt" and that that had happened multiple times in B.N's bedroom or the shed.  Tr. at 5. J.N. then told his adoptive mother and his biological mother, whom he knew as his sister, that B.N. "would hit [J.N.] in the face if [J.N.] wouldn't give [B.N.] oral sex," and B.N. "would put his fingers and crayons up [J.N.'s] butt."  Tr. at 35.  J.N. told his biological aunt, whom he also knew as his sister, that B.N. had been "touching [J.N.] in [an] inappropriate way, taking him to the shed and touching him."  Tr. at 45-456.  However, during the fact-finding hearing, J.N. denied that B.N. had hit him and stated that, if he had told anyone otherwise, it was incorrect.

[6]  On November 19, 2014, the State alleged that B.N. was a delinquent for committing the following:  Count 1, child molesting, as a Class B felony when committed by an adult; Count 2, child molesting, as a Class C felony when committed by an adult; Count 3, child molesting, as a Level 3 felony when committed by an adult; and Count 4, child molesting, as a level 4 felony when committed by an adult.  On April 24, 2015, after a fact-finding hearing, the juvenile court found B.N. to not be a delinquent on Counts 1-3, but the court

adjudicated him to be a delinquent on Count 4. On June 12, 2015, the juvenile court sentenced B.N. to formal probation. This appeal ensued.

## Discussion and Decision

[7] B.N. appeals his adjudication as a delinquent. In particular, B.N. asserts that the State failed to present sufficient evidence to support his adjudication because J.N.'s testimony was incredibly dubious. When the incredible-dubiosity rule is applied, we may "impinge upon a fact finder's function to assess the credibility of a witness." *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011). However, this rule only applies in "limited circumstances." *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Namely, the incredible-dubiosity rule requires that there be "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Id.* at 756. But B.N.'s argument fails to demonstrate that the incredible-dubiosity rule applies here.

[8] First, the State called additional witnesses besides J.N. who testified in support of J.N.'s claim. The testimony of nonvictim witnesses as to what the victim said out of court is admissible to avoid application of the incredible-dubiosity rule. *Turner*, 953 N.E.2d at 1059-60. J.N.'s adoptive mother, J.N.'s biological mother, J.N.'s biological aunt, and Madeiros all testified in support of J.N.'s claim. Even if there are contradictions in the testifying witnesses' claims, it is "indistinguishable from any other case where the jury has the duty to assess the credibility of witnesses." *Id.* at 758. "It is for the trier of fact to resolve conflicts

in the evidence and to decide which witnesses to believe or disbelieve." *Kilpatrick v. State*, 746 N.E.2d 52, 61 (Ind. 2001). Accordingly, B.N. cannot demonstrate that the State's evidence against him violated the incredible-dubiosity rule.

[9] Second, even if we were to consider only J.N.'s testimony, his allegedly contradictory statements were between statements made at the prehearing and during the fact-finding hearing. In the adult criminal context, the Indiana Supreme Court has repeatedly refused to apply the incredible-dubiosity rule to statements made pretrial and during trial when the statements made during trial are consistent. *Turner*, 953 N.E.2d at 1059; *see also Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002) ("The fact that a witness gives trial testimony that contradicts earlier pre-trial statements does not necessarily render the trial testimony incredibly dubious."). We will not deviate from those holdings in this case. J.N.'s statements during B.N.'s fact-finding hearing were consistent, and, thus, the incredible-dubiosity rule does not apply here.

[10] Finally, we note that B.N. also suggests that the juvenile court rendered inconsistent judgments when it entered not-true findings on some of the State's allegations but then adjudicated him a delinquent on the child-molesting allegation. We reject that argument. The fact that the court did not find B.N. to be a delinquent on three of the four allegations is insufficient to demonstrate that the court's adjudication that B.N. was a delinquent on the child molestation allegation was erroneous. As the Indiana Supreme Court has recognized in the context of a jury verdict in a criminal case, such decisions

"are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable." *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010). Furthermore, logically inconsistent verdicts may be due to a fact-finder's choice to exercise lenity and "refus[e] to find the defendant guilty of one or more additionally charged offenses, even if such charges were adequately proven by the evidence." *Id.* at 648. Indiana jurisprudence recognizes a fact-finder's use of lenity as "an important component of our criminal justice system." *Id.* at 649.

[11] In sum, we affirm B.N.'s adjudication for child molestation, as a Level 4 felony when committed by an adult.

[12] Affirmed.

Riley, J., and May, J. concur.