# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 08 2020, 9:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark A. Thoma
Caryn E. Garton
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Catherine Brizzi
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Kennith Tyler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

September 8, 2020

Court of Appeals Case No.
20A-CR-483

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D04-1811-F6-1338

**Robb, Judge.**

# Case Summary and Issue

[1]  Following a jury trial, Kennith Tyler was convicted of domestic battery, a Level 6 felony. Tyler appeals and raises the sole issue of whether the evidence was sufficient to support his conviction because the testimony of the complaining witness was incredibly dubious. Concluding that the incredible dubiosity rule does not apply in this case, we affirm.

# Facts and Procedural History

[2]  In 2016, Tyler met and began a romantic relationship with Ann-Marie Merriman. About a year later, Tyler and Merriman had a child, E.M., and moved in together. After approximately three months, Merriman moved back in with her parents but continued to stay at Tyler's house on nights that Tyler did not have to work.

[3]  On the night of July 15, 2018, Merriman finished work and went to Tyler's home. Not long after, Merriman and Tyler went to the Three Rivers Festival where they remained until the festival closed. After the festival, the pair went to Family Video and returned to Tyler's house. After putting their son to bed, Tyler and Merriman started to watch a movie. Approximately an hour into the movie, the two got into an argument and Merriman began to pack her things to leave. Merriman took E.M. and her things to her car, while Tyler followed them outside. Merriman placed E.M. into his car seat in the backseat on the passenger side of her car. To prevent them from leaving, Tyler tried to remove

E.M. from his car seat. In order stop Tyler, Merriman picked up E.M., at which point Tyler grabbed Merriman by the throat with his left hand. Tyler pulled Merriman towards the house by the arm, and Merriman then fell over with E.M. in her arms. Merriman testified that Tyler proceeded to choke her while she was on the ground, took E.M. out of her arms, and then threw him back down on her chest.

[4] When Merriman was able to stand up, she got into her car with E.M. and drove to a Circle K gas station that was approximately three minutes away. Merriman pulled into the Circle K and asked the clerk, Cathy Hudson, to call the police. Officer Hoffman and Officer Lichtsinn of the Fort Wayne Police Department were both dispatched to the scene. Officer Hoffman testified that when he arrived, Merriman was extremely distraught and had been crying. He also noted that Merriman had red marks or bruises on her bicep that appeared to be caused by pressure from a thumb or hand, and red marks on her neck. Officer Lichtsinn also noticed Merriman was upset and crying. Merriman informed Officer Lichtsinn that she had lost her phone in the yard during the altercation. In an attempt to locate Tyler, the officers went to Tyler's home. Officer Lichtsinn found Merriman's phone in the front yard but got no response when he knocked on the front door. Tyler testified that after the altercation he went on a walk. After a paramedic checked Merriman and E.M. for injuries, they

returned to the home of Merriman's parents. On August 23, 2018, Merriman went to victim's assistance and filed a complaint[1] against Tyler.

[5] The State charged Tyler with domestic battery and strangulation, both Level 6 felonies. A jury found Tyler guilty of domestic battery but was unable to reach a verdict as to the strangulation count.[2] The trial court entered judgment of conviction for domestic battery and sentenced Tyler to one year and 183 days. The entire sentence was ordered suspended to active adult probation. Tyler now appeals his conviction.

# Discussion and Decision

## I. Standard of Review

[6] Our standard of review for sufficiency of the evidence claims is well settled: we do not reweigh the evidence or judge the credibility of the witnesses. *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017). We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom. *Id.* We will affirm a defendant's conviction "if there is substantial

---

[1] The State states that Merriman "went to victim's assistance and filed charges against Tyler." Brief of Appellee at 6. A victim can file a complaint against a perpetrator but only the State can file charges against that person. Ind. Code § 35-34-1-1(a). We take this opportunity to remind the State, and all attorneys, that it should take care not to use legal terms of art inappropriately.

[2] The record does not definitively show that the strangulation count was dismissed. Both parties say that it was, but the page of the record they direct us to does not mention the strangulation count. The trial court's Order or Judgment of the Court following the jury trial states, "CT II: Ct declares jury hung." Appellant's Appendix, Volume II at 105. But the abstract of judgment states there was a finding of not guilty on the strangulation count. *See id.* at 110. However, the State concedes in its brief that the count was dismissed, and we accept that concession as the resolution of the strangulation count. *See* Br. of Appellee at 4.

evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Stewart v. State*, 866 N.E.2d 858, 862 (Ind. Ct. App. 2007).

## II.  Sufficiency of the Evidence

[7]  Tyler claims that the evidence is insufficient to support his conviction because Merriman's testimony was incredibly dubious. To convict Tyler of domestic battery, the State was required to prove that Tyler "knowingly or intentionally" touched Merriman in a "rude, insolent or angry manner[.]" Ind. Code § 35-42-2-1.3(a)(1).

[8]  Generally, in reviewing witness testimony, we do not judge the credibility of the witness. *Purvis,* 87 N.E.3d at 1124. We may make an exception, however, when that testimony is incredibly dubious. *See Rodgers v. State*, 422 N.E.2d 1211, 1213 (Ind. 1981). Within the narrow limits of the "incredible dubiosity" rule, a court may impinge upon a jury's function to judge the credibility of a witness. *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The rule is applied in limited circumstances, namely where there is "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). If any one factor is lacking, application of the incredible dubiosity rule is precluded.  *Id.* at 758. Application of this rule is "rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love*, 761

N.E.2d at 810. "[W]hile incredible dubiosity provides a standard that is 'not impossible' to meet, it is a 'difficult standard to meet, [and] one that requires great ambiguity and inconsistency in the evidence.'" *Moore*, 27 N.E.3d at 756 (quoting *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001)).

[9]     Tyler contends that Merriman's testimony is so incredibly dubious that no reasonable fact finder could have found him guilty of domestic battery. First, Tyler states that her "timeline of when things allegedly happened does not match up with when officers were dispatched to Circle K." Belated Brief of Appellant at 15. Second, Tyler argues that her "description of how the alleged physical altercation is not feasible" given that E.M. was in the middle of the alleged altercation yet completely unharmed. *Id.* Third, Tyler claims that Merriman's testimony is incredible because the two spent time together after the alleged altercation and Merriman "only decided to pursue charges twelve (12) days after [Tyler] filed papers for custody and parenting time of [E.M.]" *Id.* Lastly, Tyler states that the other "evidence offered by the State did not overcome [Merriman's] incredibly dubious testimony." *Id.*

[10]    In applying the *Moore* factors, we conclude the incredible dubiosity rule is inapplicable to the present case. With respect to the first factor, the rule can only be applied in situations where there is a "sole testifying witness[.]" *Moore*, 27 N.E.3d at 756. Although Merriman was not the sole testifying witness, she was the only eyewitness. Merriman was the only witness who did (or could) testify that Tyler touched her in a "rude, insolent or angry manner." Ind. Code § 35-42-2-1.3(a)(1). The State presented multiple witnesses besides Merriman;

however, none of them were eyewitnesses to the altercation. Without Merriman's testimony, the other witnesses' testimony regarding what occurred *after* the altercation would likely be insufficient to prove Tyler committed domestic battery. Because Merriman is the only eyewitness, the first factor is satisfied. *See Smith v. State*, 34 N.E.3d 1211, 1221-22 (Ind. 2015) (noting that although three witnesses testified, without the allegedly incredibly dubious testimony of one witness, the remaining witnesses' testimony would have been an insufficient basis for the jury to find the defendant guilty; therefore, the first factor was satisfied).

[11]     As to the second factor, the incredible dubiosity rule applies only to conflicts in trial testimony. *Buckner v. State*, 857 N.E.2d 1011, 1018 (Ind. Ct. App. 2006). Tyler claims that Merriman's testimony about the events, those immediately leading up to the alleged altercation as well as the altercation itself, does not match up with when the officers were ultimately dispatched to Circle K. The second prong is satisfied "only when the witness's trial testimony was inconsistent within itself, not [when] it was inconsistent with other evidence or prior testimony." *Smith*, 34 N.E.2d at 1221. Although Tyler contends that only his timeline and description of the events at issue is reasonable, Merriman's testimony differing from Tyler's does not mean that it is incredibly dubious. *See Berry v. State*, 703 N.E.2d 154, 160 (Ind. 1998) (declining to apply the incredible dubiosity rule where there were inconsistencies in the testimony among witnesses, but no one witness contradicted himself).

[12] Tyler also argues that Merriman changed her timeline of events after speaking with a detective and after being deposed. However, the fact that a witness gives trial testimony that contradicts earlier pretrial statements does not necessarily render the trial testimony incredibly dubious. *Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002). Merriman did not contradict herself while testifying at trial, thus the second factor is not satisfied.

[13] And as to the third factor, "[i]n a case where there is circumstantial evidence of an individual's guilt, reliance on the incredible dubiosity rule is misplaced." *Moore*, 27 N.E.3d at 759 (quotation omitted). However, such circumstantial evidence is not required to independently establish guilt. *Smith*, 34 N.E.3d at 1221. Here, there is enough circumstantial evidence that the third factor is not satisfied. Merriman had a bruise on her arm as well as a red mark on her neck. Hudson, the Circle K clerk, testified that she saw the red marks, that Merriman told her that the marks were from domestic violence, and that Merriman was visibly distraught and panicky when she asked Hudson to call 9-1-1. Officer Hoffman also testified that, when he arrived at Circle K, Merriman was extremely distraught and had been crying. Further, Officer Lichtsinn found Merriman's phone in the yard where the altercation occurred. Because there is not a "complete lack of circumstantial evidence of the defendant's guilt[,]" the third prong is not satisfied. *Majors v. State*, 748 N.E.2d 365, 367 (Ind. 2001).

[14] Because the second and third prongs of the incredible dubiosity test are not met by the circumstances of this case, Tyler has failed to establish that the limited

exception of the incredible dubiosity rule applies and therefore we will not judge Merriman's credibility for ourselves.

[15] Even under the traditional sufficiency standard there was sufficient evidence to uphold Tyler's conviction. Merriman's testimony differing from Tyler's testimony was a matter of credibility for the jury to determine. "It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve." *Kilpatrick v. State*, 746 N.E.2d 52, 61 (Ind. 2001). Further, that Merriman filed a complaint against Tyler only after receiving notice that Tyler had filed for custody and parenting time of E.M. was a fact before the jury. If the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb it. *Id*.

[16] The State presented direct testimony and circumstantial evidence that was sufficient for a reasonable finder of fact to find Tyler guilty beyond a reasonable doubt of domestic battery.

# Conclusion

[17] The incredible dubiosity rule does not apply in the circumstances of this case. The victim's testimony and corroborating evidence are sufficient to support Tyler's conviction. Therefore, we affirm.

[18] Affirmed.

Crone, J., and Brown, J., concur.