Nanette **LUCKHART**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 18S00–9905–CR–276.

Supreme Court of Indiana.

Oct. 4, 2000.

Geoffrey A. Rivers, Joseph P. Hunter, Muncie, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

Nanette Luckhart appeals her conviction for murder committed during perpetration of a robbery as a result of the stabbing death of her seventy-five-year-old neighbor Paul Gann. In this direct appeal Luckhart claims the trial court erred by admitting her confession into evidence, and that the evidence is not sufficient to sustain the conviction. We disagree and therefore affirm.

### Facts

The facts most favorable to the verdict show that Luckhart was a friend of Jeff Gann. Jeff lived with his father Paul Gann in the same Muncie neighborhood as Luckhart. The record shows that Luckhart was aware that Paul kept money in his house because Jeff told her he had stolen money from his father numerous times to purchase drugs and beer. Around 3:00 a.m. on July 3, 1998, Luckhart left the trailer she and her five children shared with her mother-in-law and invited Jeff to go with her to purchase crack cocaine in Whitely, Indiana. Luckhart's husband Eric was in jail at the time. Luckhart purchased the cocaine from Yolanda Cobb, who had sold drugs to Luckhart on prior occasions. Luckhart then drove to an isolated rural area where she and Jeff smoked crack cocaine. When Jeff got out of the car to answer nature's call, Luckhart drove away without him.

Luckhart returned to Whitely approximately two hours later and purchased

more crack cocaine from Cobb. Cobb noticed that Luckhart appeared very nervous and was not wearing any shoes. Luckhart told Cobb that she got the money to purchase the drugs from a friend and that she "might've killed the old mother f* * *er." R. at 665.

In the meantime, after hitchhiking back to Muncie, Jeff arrived home around 6:00 a.m. and discovered that his father was dead. Paul had been struck in the head with a ceramic lamp and stabbed at least seven times, with fatal wounds to his neck and chest. Jeff ran to Luckhart's trailer and accused her of killing his father.

Later that day, police questioned Luckhart about Paul's murder, and she denied any involvement. One week later, police contacted Luckhart and asked her to talk with them again about Paul's murder. Luckhart voluntarily went to the police station around 8:00 p.m. on July 9, 1998. After executing a waiver of rights, police interrogated Luckhart for approximately five hours, all of which was recorded on videotape. Initially, Luckhart again denied any involvement in Paul's murder, claiming that she had been in her trailer all night. However, Luckhart gradually changed her story as police confronted her with incriminating evidence, some of which was true and some of which was fabricated. Ultimately, Luckhart told police that she took Cobb to Paul's house in order to steal money and, when Paul unexpectedly awoke, Luckhart smashed a lamp on his head and assisted Cobb in stabbing him. Luckhart also told police that she and Cobb took $100 from Paul's home. Cobb was never considered a suspect in Paul's murder.

At trial, Luckhart changed her story once again, testifying that she had spent part of the night smoking crack cocaine in her car with Jeff and that Jeff had confessed to her that he killed his father. The jury convicted Luckhart of felony murder and voluntary manslaughter. The trial court sentenced Luckhart to sixty-five years on the felony murder conviction. No sentence was imposed on the voluntary manslaughter conviction. This direct appeal followed. Additional facts are set forth below where relevant.

### *Discussion*

#### I.

 Luckhart first asserts the trial court erred by admitting into evidence her videotaped confession. Specifically, Luckhart contends that her confession was involuntary because it was the product of police deception and she was under the influence of crack cocaine. When a defendant challenges the admissibility of her confession, the State must prove beyond a reasonable doubt that the confession was given voluntarily. *Carter v. State*, 730 N.E.2d 155, 157 (Ind.2000); *Schmitt v. State*, 730 N.E.2d 147, 148 (Ind.2000).[1] The voluntariness of a confession is determined from the "totality of the circumstances." *Berry v. State*, 703 N.E.2d 154, 157 (Ind.1998). The "totality of the circumstances" test focuses on the entire interrogation, not on any single act by police or condition of the suspect. *Light v. State*, 547 N.E.2d 1073, 1079 (Ind.1989). We review the record for evidence of inducement by way of violence, threats, promises, or other improper influences. *Berry*, 703 N.E.2d at 157. Although deception on the part of police is not conclusive, *Light*, 547 N.E.2d at 1079 (citing *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)), it does weigh heavily against the voluntariness of the defendant's confession. *Heavrin v. State*, 675 N.E.2d 1075, 1080 (Ind.1996). In the end, we must

---

1. We note that the federal constitution requires the State to prove only by a preponderance of the evidence that a defendant's confession was voluntarily given. *Smith v. State*, 689 N.E.2d 1238, 1246–47 n. 11 (Ind.1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 167–69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Lego v. Twomey*, 404 U.S. 477, 488–89, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)). However, in Indiana we require the State to prove the voluntariness of a confession beyond a reasonable doubt, and trial courts are bound to apply this standard when evaluating such claims.

judge whether the police conduct in relation to the specific suspect was overbearing. *Light*, 547 N.E.2d at 1079. We do not re-weigh the evidence, but rather determine whether there is substantial evidence to support the trial court's findings. *Berry*, 703 N.E.2d at 157.

Here, the trial court issued an order denying Luckhart's motion to suppress her videotaped confession, which includes the following factual findings:

1. On the evening of July 9th, 1998, and the early morning of July 10th, 1998, Defendant was interrogated by members of the Muncie Police Department following execution of a valid waiver of rights. The interrogation lasted approximately five (5) hours.

. . . .

3. Defendant voluntarily presented herself for an interview at the Muncie Police Department at approximately 8:00 p.m. on July 9th, 1998. Defendant was presented a written waiver of rights which was read to her and then she was given time to read the document herself. Following this procedure, Defendant signed the waiver. Sergeant Steve Bell detected no evidence of alcohol use or drug use. Defendant was able to carry on a lucid conversation and appeared to be in control of all her faculties. Defendant was able to walk without assistance and her coordination did not appear to be impaired. According to Sergeant Bell, Defendant appeared to be of average intelligence. Defendant was granted rest breaks and Defendant

did not ask to cease the interview. No physical threats were ever made. Defendant's responses to the officers were sequential and coherent. The officers offered no legal advice to Defendant. Defendant had been involved in the criminal justice system on a prior occasion and was not untutored in the conduct of a police investigation.

4. During the course of the interrogation, as least two (2) factual misrepresentations were made to Defendant by police interrogators. Defendant was advised the police were in possession of a fingerprint linked to Defendant and that two (2) witnesses had seen the Defendant at the subject premises. Neither of these representations was true. These representations were made, at least in part, to judge Defendant's reaction to this information. No evidence exists of any additional substantial misrepresentations made by the police. No evidence exists of any promises made regarding leniency or special treatment or other inducements.

R. at 106–108. The trial court then concluded "beyond a reasonable doubt that Defendant's statement was made freely and voluntarily and that Defendant's will was not improperly overborn by the police. . . . Although unfortunate, the two (2) misrepresentations made by the police to this Defendant did not substantially impact this Defendant's will to resist." R. at 111.[2]

---

2. Luckhart takes issue with the trial court's findings that police made only two misrepresentations. According to Luckhart, the police told fourteen separate lies. Most of the alleged misrepresentations do not merit discussion. Illustrative of Luckhart's claims is the assertion police lied to her when they told her *"several people* had given *sworn testimony* that they saw Luckhart's car leave the night of the murder." Amended Brief of Appellant at 10 (emphasis in original). The record shows the police interviewed only two neighbors who saw Luckhart's car leave the night of the

murder, and their statements were not sworn. R. at 471–72. One of the additional misrepresentations is only slightly more substantial. Officer Bradshaw told Luckhart that her burglary of Paul's home three nights before the murder was not technically a crime because Paul never reported it. This certainly is not true. Indeed Luckhart was charged with burglary in this case but the jury acquitted her. In any event, we do not agree that this additional misrepresentation affected Luckhart's will to resist.

■ After independently reviewing the videotapes and transcript, we find that the police undoubtedly used deception and trickery in their interrogation of Luckhart. The officers even admitted as much. For example, Sergeant Bell testified at trial that it is a common police technique to "bluff" suspects during interrogations. R. at 854. Lieutenant Steven Stanley testified that the purpose of this technique is to judge a suspect's reaction to the bluff. R. at 973.

Although we do not condone such deceptive police conduct, *see Light*, 547 N.E.2d at 1079, we cannot say that under the totality of the circumstances Luckhart's confession was involuntary. Luckhart knew she was a suspect in Paul's murder, selected a time convenient for her to give a statement to police, voluntarily went to the police station to give a statement, signed a waiver of her *Miranda* rights before giving the statement, and knew that the interrogation was going to be videotaped. *See Heavrin*, 675 N.E.2d at 1081 (signing a waiver of rights form provides *some* indication that a defendant's confession was made voluntarily). Although the interrogation lasted five hours, police gave Luckhart two breaks and allowed her to smoke during the interrogation, even giving her cigarettes. *See Light*, 547 N.E.2d at 1079 (noting that in most cases where confessions are held involuntary, the suspects are interrogated for days, not hours). Further, Luckhart never indicated that she wanted to stop the interrogation, and she never asked for an attorney. More importantly, police did not use violence or threaten Luckhart at any point during the interrogation. The police deception did not render Luckhart's videotaped confession involuntary.

■ As for Luckhart's assertion that her confession was involuntary because she was under the influence of crack cocaine during the interrogation, we have held that a confession may be given knowingly and voluntarily, notwithstanding voluntary intoxication. *Ellis v. State*, 707 N.E.2d 797, 802 (Ind.1999). We will deem a defendant's confession incompetent only when she is so intoxicated that it renders her not conscious of what she is doing or produces a state of mania. *Id.* Intoxication to a lesser degree only goes to the weight to be given to the confession, not its admissibility. *Id.*

■ Sergeant Bell testified at trial that during the interrogation Luckhart did not exhibit any signs of drug or alcohol use, was oriented as to time and place, answered questions in a logical sequence, and was able to walk without assistance. R. at 859. Additionally, the trial court observed that during the interrogation Luckhart was able to carry on a lucid conversation, appeared to be in control of her faculties, and was able to walk without assistance. R. at 107. Luckhart's alleged intoxication did not render her confession involuntary.

## II.

■ For her last allegation of error Luckhart contends the evidence was not sufficient to support the conviction. Luckhart seems to acknowledge that a confession standing alone is sufficient to sustain a conviction. *See Morrison v. State*, 516 N.E.2d 14, 16 (Ind.1987). She complains, however, that her confession was the product of police suggesting the answers that she ultimately gave and that there are other reasonable theories of who may have murdered Paul, including his son Jeff. Luckhart's contention amounts to an invitation for this Court to reweigh the evidence. We decline. Luckhart presented her alternative theories to the jury, and it rejected them. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Brown v. State*, 720 N.E.2d 1157, 1158 (Ind.1999). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

The evidence as recited in the facts section of this opinion is sufficient to sustain Luckhart's conviction. We also note that Luckhart provided information to the police that was never made public during the investigation. She told police precisely the location and positioning of Paul's body, the type of knife used and the location of wounds, that Paul was struck on the head with a lamp, and that the telephone cord had been torn from the wall. R. at 991–1024. We reject, as apparently did the jury, the notion that the police supplied this information to Luckhart.

### Conclusion

Judgment affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.