**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 09 2013, 5:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BOUBACARR MOUSSA,　　　　　　　）
　　　　　　　　　　　　　　　　　）
　　　Appellant-Defendant,　　　　　）
　　　　　　　　　　　　　　　　　）
　　　　　vs.　　　　　　　　　　　）　No. 49A05-1209-CR-449
　　　　　　　　　　　　　　　　　）
STATE OF INDIANA,　　　　　　　　）
　　　　　　　　　　　　　　　　　）
　　　Appellee-Plaintiff.　　　　　　）

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49G02-1107-FB-51058

**September 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Boubacarr Moussa appeals his conviction for failure to stop after an accident causing serious bodily injury, as a Class B felony, following a jury trial. Moussa raises two issues on appeal:

1. Whether he waived his <u>Miranda</u> rights when he was questioned by police officers at the hospital.

2. Whether he voluntarily consented to a blood draw.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Shortly before 3:30 a.m. on July 19, 2011, Indianapolis Metropolitan Police Department ("IMPD") Officer Ryan Archer conducted a routine traffic stop. During the stop, Moussa drove his truck into the rear of Officer Archer's patrol car and pushed it into the car he had originally pulled over. Moussa continued driving, but he was found hiding in some bushes after his car ran off the road three-quarters of a mile away. A K-9 unit retrieved Moussa from the bushes, which resulted in some lacerations. Moussa was taken to a nearby hospital and treated for his injuries, as was Officer Archer, who sustained a concussion and an injury to his leg.

The doctor who treated Moussa allowed IMPD Sergeant Michael Duke, a DUI Unit Supervisor, to speak to Moussa while the hospital staff examined him. Sergeant Duke advised Moussa of his <u>Miranda</u> rights and questioned him about the crash. Moussa acknowledged that he understood his rights and he did not request an attorney. Moussa then said that he had been driving home from his brother's house after having consumed

2

three beers, and he claimed that he saw another vehicle hit the police cruiser. Sergeant Duke videotaped the interrogation.

Approximately one hour after Sergeant Duke finished his interview, a second officer, IMPD Detective Bruce Wright, a member of the Fatal Alcohol Crash Team, interrogated Moussa and videotaped his interrogation. Detective Wright awoke Moussa to interview him. Detective Wright advised Moussa of his <u>Miranda</u> rights and Moussa responded by stating that he understood his rights. Detective Wright then began to question Moussa about the accident and Moussa answered the detective's questions. Consequently, Detective Wright informed Moussa of Indiana's implied consent law and offered Moussa a blood test. Moussa agreed to the test. The result of the blood draw showed that Moussa's blood alcohol content was .23 percent weight per volume, nearly three times the legal limit.

At trial, Moussa filed motions to suppress both his statements and the results of the blood test on the grounds that he had not given the statements or consented to the blood draw knowingly and voluntarily. The court denied the motions to suppress, and a jury found Moussa guilty of a Class B felony failure to stop after an accident causing serious bodily injury. This appeal ensued.

**DISCUSSION AND DECISION**

Moussa contends that the trial court abused its discretion when it admitted into evidence his statements to the officers and the results of the blood draw. A trial court has broad discretion in determining the propriety of admission of evidence. <u>Fulton County Comm'rs v. Miller</u>, 788 N.E.2d 1284, 1286 (Ind. Ct. App. 2003). Reversal of the trial

3

court's ruling is warranted only when the court has abused its discretion, and its action is clearly erroneous and against the facts and circumstances before it.  Id.  We will not reverse the trial court's admission of evidence absent a showing of prejudice.  Id.

## Issue One:  Waiver of Miranda Rights

The Fifth Amendment of the United States Constitution provides a privilege against self-incrimination during a custodial interrogation.  Miranda v. Arizona, 384 U.S. 436, 461 (1966).  Custodial interrogation is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"  Palilonis v. State, 970 N.E.2d 713, 732 (Ind. Ct. App. 2012) (quoting Zook v. State, 513 N.E.2d 1217, 1220 (Ind. 1987)).  Neither party disputes that Moussa was subjected to custodial interrogation by Sergeant Duke and Detective Wright.

"A waiver of one's Miranda rights occurs when a defendant, after being advised of those rights and acknowledging an understanding of them, proceeds to make a statement without taking advantage of those rights."  Crain v. State, 736 N.E.2d 1223, 1230 (Ind. 2000).  To be admissible, a suspect's confession must also be voluntarily given.  Carter v. State, 686 N.E.2d 1254, 1258 (Ind. 1997).  A confession is voluntary if it is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.  Palilonis, 970 N.E.2d at 732.

Under the United States Constitution, the State must prove by a preponderance of the evidence that the defendant's confession was voluntary.  Clark v. State, 808 N.E.2d

4

1183, 1191 (Ind. 2004). Under the Indiana Constitution, when the defendant challenges the admissibility of a confession, the State must show voluntariness beyond a reasonable doubt. Id. The voluntariness of a defendant's confession is determined from the totality of the circumstances. Washington v. State, 808 N.E.2d 617, 622 (Ind. 2004).

There is no evidence to support the suggestion that Moussa talked to police because of coercion, threat, or improper influence. Instead, Moussa argues that he could not have knowingly, voluntarily, and intelligently waived his Fifth Amendment rights because he did not understand his rights due to his injuries, the distractions of the hospital staff, and having been awakened immediately before the second interview. We will address each argument in turn.

In Palilonis, the court held that the defendant's statements to police were admissible despite recently sustaining injuries from being beaten up. 970 N.E.2d at 733. The court reasoned that the defendant incurred only superficial scratches and bruises and did not suffer any head trauma that would have affected his decision making. Id. As stated above, each of Moussa's interviews was recorded. The video-tapes show that Moussa was in discomfort during the interviews. He had sustained bite wounds and other puncture wounds, and he was wearing a C-collar. Nevertheless, nothing in the recording suggests Moussa had suffered any head trauma that would have affected his awareness of the interview or his decision making. The injuries Moussa sustained did not prevent him from hearing, understanding the interrogators, and cooperating with the questioning.

The parties agree that Moussa was likely on some type of pain medication during the interviews. But our supreme court has consistently held that statements are not

5

inadmissible per se when a suspect is intoxicated; they are only inadmissible because of intoxication when the suspect is so intoxicated that he is unaware of what he is saying or the intoxication has produced a state of mania in the suspect. See e.g., Wilkes v. State, 736 N.E.2d 227, 231 (Ind. 2000); Luckhart v. State, 736 N.E.2d 227, 2331 (Ind. 2000). Here, our review of the video recordings do not suggest that Moussa was in a state of mania or that he was so intoxicated that he was unaware of what he was saying. Moussa responded to his interviewers often by taking a few seconds to think through and formulate his answers. He even corrected misstatements made by himself and the officers during the interviews. Thus, Moussa's statements are not inadmissible due to his injuries or intoxication.

Concerning the commotion in the hospital room, we first note that Moussa does not demonstrate how a busy room might rise to the level of a coercive environment and negate an otherwise valid waiver of one's Miranda rights. As such, he has waived this argument. Further, Sergeant Duke asked and received permission from the hospital staff to speak to Moussa. At one point in the video recording, a nurse asked Sergeant Duke to interview Moussa on the other side of his bed so that she would not interfere with the interview. Thus, there is no indication that the medical personnel working with Moussa believed that their work would interfere with the interview, and the video evidence shows that Moussa was able to concentrate during the interrogation despite the activity in the hospital room and the medical treatment being administered to him.

Finally, the fact that Moussa was aroused from sleep before the second interview does not negate the voluntariness of his statements. For example, in Powell v. State, 437

6

N.E.2d 969, 971 (Ind. 1982), our supreme court held that a confession was voluntary even though the defendant had been awakened and then interrogated. Powell is controlling here. The video shows that Moussa was alert during the interview and able to answer questions coherently. Thus, under the totality of the circumstances Moussa's statements were voluntarily made, and the trial court did not abuse its discretion when it admitted his statements into evidence.

**Issue Two: Blood Draw**

Moussa also contends that the trial court erred when it admitted into evidence the result of his blood draw because Moussa did not voluntarily give his consent to the blood draw. A blood draw under our implied consent laws is a search for purposes of the Fourth Amendment. Copas v. State, 891 N.E.2d 663, 664 (Ind. Ct. App. 2009). In general, the Fourth Amendment prohibits warrantless searches. Hannoy, 789 N.E.2d at 982. Searches conducted without a warrant are per se unreasonable subject to a few well-delineated exceptions. Id. One recognized exception to the warrant requirement is a voluntary and knowing consent to search.[1] Meyers v. State, 790 N.E.2d 169, 172 (Ind. Ct. App. 2003); Krise v. State, 746 N.E.2d 957, 961 (Ind. 2001).

---

[1] The presence of exigent circumstances is similarly a well-established exception to the warrant requirement. The reasonableness of a warrantless search under the exigent circumstances exception is evaluated based upon the totality of the circumstances. Missouri v. McNeely, 133 S. Ct. 1552, 1557 (2013). The State has the burden to prove exigent circumstances justify a warrantless search. Id. at 1567 In Schmerber v. California, 384 U.S. 757, 771 (1966), the Court recognized that the human body's natural metabolic process, which causes the dissipation of alcohol in the blood over time, is an exigent circumstance for the purpose of warrantless searches. The Court went on to find that the dissipation of alcohol, combined with the defendant being involved in a serious accident and needing to be taken to a hospital for treatment, and the time needed for police to investigate the scene of the crash, established exigent circumstances necessary for a warrantless search. Id. As in Schmerber, Moussa was involved in a serious accident. The police had to investigate the scene of the crash and secure the scene where Moussa's vehicle went off the road. Further, Moussa required medical care and was transported to the hospital and treated for injuries before he could be interviewed. Nonetheless, because Moussa consented to the search, we need not decide this issue.

7

When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was freely and voluntarily given. The voluntariness of this consent to search is a question of fact to be determined from the totality of the circumstances. A consent to search is valid unless it is procured by fraud, duress, fear, or intimidation, or where it is merely a submission to the supremacy of the law. To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege. Such a waiver cannot be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license the person knows may be freely and effectively withheld. Knowledge of the right to refuse a search is one factor that indicates voluntariness. Meyers v. State, 790 N.E.2d 169, 172 (Ind. 2003).

The totality of the circumstances from which the voluntariness of a detainee's consent is to be determined includes, but is not limited to, the following considerations: 1) whether the defendant was advised of his Miranda rights prior to the request to search; 2) the defendant's education and intelligence; 3) whether the defendant was advised of his right not to consent; 4) whether the defendant has had previous encounters with law enforcement; 5) whether the officer claimed authority to search without consent; 6) whether the officer was engaged in any illegal action prior to the request; 7) whether the defendant was cooperative previously; and 8) whether the officer was deceptive as to his true identity or the purpose of the search. Id.

Under Indiana Code Section 9-30-6-2, a law enforcement officer with probable cause to believe that a person has operated a vehicle while intoxicated shall offer a chemical test to that person, and the person must submit to that test to comply with the law. Similarly, under Indiana Code Section 9-30-7-3, an officer shall offer a chemical test to any person who the officer has reason to believe operated a vehicle involved in a fatal or serious bodily injury accident, and the person must submit to that test to comply with the law. Under either version of the implied consent law, the person retains the right to refuse consent, but doing so carries with it the civil penalty of a license suspension for one year or, in some cases, two years. See Ind. Code §§ 9-30-6-7; 9-30-7-5.

8

Here, Detective Wright had probable cause to offer Moussa the blood test under the implied consent law. Detective Wright testified that "the odor of an alcoholic beverage was extremely strong" in the trauma room where Moussa was being treated. Tr. at 224. This testimony, coupled with Moussa's impaired driving, gave the Detective reason to believe Moussa had operated his vehicle under the influence of alcohol.

Moussa asserts that his consent to the blood test was involuntary because "[a]t the time he was advised of the implied consent law he had just been admitted to the hospital with serious dog bite injuries, was on pain medication, had been woken from sleep," and simply did not understand the implied consent law. Appellant's Br. at 8. For the same reasons that we find Moussa did, in fact, waive his <u>Miranda</u> rights, we also find that Moussa's injuries, possible intoxication, and having been awakened from sleep did not prohibit his voluntary consent to the blood draw.

Further, the seven-factor test stated in <u>Meyers</u> demonstrates the voluntariness of Moussa's consent. The video recordings show that Detective Wright properly read the implied consent law to Moussa. The recordings show that Moussa was fully aware of the interview taking place and agreed to the offer of a blood draw from Detective Wright. Detective Wright even repeated the implied consent law advisement so that Moussa would hear it all the way through without interruption.

Moussa grew up in Niger and completed the equivalent of a high school education. He was self employed and denied ever having been fired from a job. Moussa has been arrested multiple times and he has one prior conviction. Thus, Moussa has had previous interaction with law enforcement officers. The record does not indicate that Detective

9

Wright made any express or implied claims of authority to search without Moussa's consent, was engaged in any illegal action prior to the request, or was deceptive as to his true identity or the purpose of the search. The video-tape shows that Moussa was cooperative during the encounter. Thus, under the totality of the circumstances, Moussa's consent to the blood draw was voluntary and uncoerced.

**Conclusion**

Moussa voluntarily made statements to the officers and consented to the blood draw. We hold that the trial court did not err when it admitted the evidence at trial.

Affirmed.

MATHIAS, J., and BROWN, J., concur.