## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 08 2020, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Darren D. Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven Hyche,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 8, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2626<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese Flowers, Judge<br><br>Trial Court Cause No.<br>49G20-1711-F2-43057 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Steven Hyche (Hyche), appeals his convictions for dealing in cocaine, a Level 2 felony, Ind. Code §§ 35-48-4-1(a)(2), -(e)(2); possession of cocaine, a Level 4 felony, I.C. §§ 35-48-4-6(a), -(c)(2); dealing in a narcotic drug, a Level 3 felony, I.C. §§ 35-48-4-1(a)(2), -(d)(2); possession of a narcotic drug, a Level 5 felony, I.C. § 35-48-4-6(a); possession of a controlled substance, a Level 6 felony, I.C. § 35-48-4-7(a); and possession of marijuana, a Class B misdemeanor, I.C. § 35-48-4-11(a)(1).

We affirm.

# ISSUE

Hyche presents one issue on appeal, which we restate as: Whether the trial court abused its discretion when it admitted his post-*Miranda* statements into evidence.

# FACTS AND PROCEDURAL HISTORY

In September 2017, Hyche began serving a sentence on home detention at his apartment located in the 6500 block of Springhill Way, Indianapolis, Indiana. As part of his home detention contract with Community Corrections, Hyche had agreed to allow compliance officers to enter his apartment at any time and to search if they had reasonable suspicion that he had or was violating a Community Corrections rule. Hyche had also agreed under the contract to refrain from possessing any illegal substances.

On November 2, 2017, Community Corrections Officer Jill Jones (Officer Jones) went to Hyche's apartment to perform a compliance check. Officer Jones, who for her safety was accompanied by Officer Scott Nickels (Officer Nickels) of the Indianapolis Metropolitan Police Department (IMPD), knocked on the door of Hyche's apartment. When Hyche opened the door, the officers immediately recognized the smell of marijuana coming from his apartment. Hyche seemed surprised at the officers' presence on his doorstep, acted nervous, and started to shut the door. The officers asked that Hyche step outside, where Officer Nickels placed him in handcuffs.

Officers Jones, Officer Nickels, and three other IMPD officers who had been waiting nearby in case they were needed entered Hyche's home to perform the compliance search. Upon entry, the officers observed a scale in the kitchen that had a white powdery residue on it that they suspected was narcotics. Officer Nickels opened a kitchen drawer directly below the scale and found three bags containing what was later confirmed to be over three grams of a heroin/fentanyl mix, over six grams of cocaine, and thirty-two Alprazolam pills. Also found in the drawer were Hyche's driver's license, his birth certificate, and a reminder card for a court appointment on October 31, 2017, bearing Hyche's name. The officers encountered two other people in the apartment, a man and a woman. The woman reached into her pocket repeatedly, prompting a female officer to handcuff and search her. A bindle of cocaine was found in the woman's bra. An officer read Hyche, the man, and

the woman their *Miranda* advisements. Hyche orally confirmed with the officer that he understood those rights.

[7] After discovering the narcotics, the officers ceased the compliance check and, pursuant to their established procedure, asked Hyche for his consent to search further. An officer reviewed the IMPD's consent-to-search form with Hyche. Hyche informed the officer that he had mental health issues and did not understand the form. Because Hyche had expressed reservations, following their established procedure, the officers ceased attempting to procure his consent and applied for a search warrant.

[8] The officers waited with Hyche in his apartment for approximately one and one-half hours while the search warrant was processed. During the wait, Hyche sat on the couch in his living room, watched television, and conversed with the officers about his children, the device he used to receive his television signal, and the movie they were watching. Hyche did not appear to the officers to be intoxicated, and he conversed with them readily, responded to them in an appropriate manner, and had no apparent problems understanding them.

[9] In addition to the drugs found in the kitchen drawer, execution of the search warrant recovered less than a gram of marijuana from the bedroom and kitchen of Hyche's apartment. During a search incident to his arrest, $773, mostly in $20 bills, was found in Hyche's pocket. After the search warrant was executed and Hyche was waiting to be transported to the jail, Hyche told Officer Nickels that all the drugs found in his home were his, but he denied any dealing.

Regarding the amount of drugs found, he told the officer that "I know that's a lot more than what a user would have, but that's what I have[,]" "he used a little of everything[,]" and "I use a lot." (Transcript Vol. III, p. 27).

[10] On November 6, 2017, the State filed an Information, charging Hyche with Level 2 felony dealing cocaine, Level 4 felony possession of cocaine, Level 3 felony dealing a narcotic drug, Level 5 felony possession of a narcotic drug, Level 6 felony possession of a controlled substance, and Class B misdemeanor possession of marijuana. In a separate Information, the State alleged that Hyche was an habitual offender. On May 28, 2018, Hyche filed a motion to suppress evidence, arguing, among other things, that his waiver of his *Miranda* rights and his post-*Miranda* admissions to law enforcement were not voluntary due to his drug intoxication and his mental health issues. On August 23, 2018, after an evidentiary hearing on Hyche's motion to suppress, the trial court denied the motion.

[11] On October 22, 2018, the trial court convened Hyche's two-day, bifurcated jury trial. Hyche's statements to Officer Nickels that the drugs found in his home were his but denying he was dealing were admitted at trial over Hyche's objections. At the conclusion of the first phase of the trial, the jury found Hyche guilty. Hyche waived his jury right on the second phase of the trial on the individual charge and habitual offender enhancements. The trial court found that Hyche had the prior convictions that enhanced his individual charges and that he was an habitual offender.

[12] On November 15, 2018, the trial court held Hyche's sentencing hearing. The trial court vacated Hyche's possession of cocaine and possession of a narcotic drug convictions. The trial court imposed an aggregate sentence of twenty years on the underlying convictions and enhanced Hyche's Level 2 felony dealing in cocaine conviction by an additional six years for being an habitual offender.

[13] Hyche now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[14] Hyche challenges the admission of his incriminating statements at trial. Decisions to admit or to exclude evidence are within the sound discretion of the trial court. *Wright v. State*, 108 N.E.3d 307, 313 (Ind. 2018). Accordingly, we afford those decisions deference and will reverse only upon an abuse of the trial court's discretion and upon that error affects the defendant's substantial rights. *Id*. However, issues implicating constitutional questions, such as the voluntariness of a confession, are reviewed *de novo*. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). Upon review of a challenge to a trial court's admission of a confession, we do not reweigh the evidence, and we examine the record for substantial, probative evidence of voluntariness. *Ringo v. State*, 736 N.E.2d 1209, 1211 (Ind. 2000). In addition, we consider only the evidence most favorable to the trial court's ruling. *Pruitt v. State*, 834 N.E.2d 90, 115 (Ind. 2005).

## II. *Voluntariness*

[15]    Hyche argues that the trial court abused its discretion in admitting his incriminating statements because they were involuntary. The Fifth Amendment's privilege against self-incrimination applies to the states through the Fourteenth Amendment. *Withrow v. Williams*, 507 U.S. 680, 689, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). In addition, Article I, Section 14 of our state constitution provides that "[n]o person, in any criminal prosecution, shall be compelled to testify against himself." Part of these constitutional protections is that, in order for a defendant's statement to be admissible at trial against him, it must have been given voluntarily. *Wright v. State*, 916 N.E.2d 269, 277 (Ind. Ct. App. 2009), *trans. denied*. Under state law, when a defendant challenges the voluntariness of his confession, the State must prove beyond a reasonable doubt that the confession was given voluntarily. *Jackson v. State*, 735 N.E.2d 1146, 1153 n.4 (Ind. 2000). The voluntariness of a defendant's statement is determined by examining the totality of the circumstances, including any violence, threats, promises or other improper influences brought to bear to bring about the statement. *Luckhart v. State*, 736 N.E.2d 227, 229 (Ind. 2000). Factors to be considered are "'any element of police coercion; the length, location, and continuity of the interrogation; and the maturity, education, physical condition, and mental health of the defendant.'" *Weisheit v. State*, 26 N.E.3d 3, 18 (Ind. 2015) (quoting *Wilkes v. State*, 917 N.E.2d 675, 680 (Ind. 2009)).

[16]     Considering the evidence most favorable to the trial court's ruling, here, after officers found the heroin/fentanyl mix, cocaine, and pills in his kitchen drawer, Hyche was provided his *Miranda* advisements, which he affirmed that he understood. An officer attempted to procure Hyche's consent but stopped when Hyche indicated that he had mental health issues and did not understand the consent form. Hyche waited for approximately one and one-half hours on the couch in his living room while a search warrant was procured for his apartment. While waiting, Hyche watched television and engaged in an informal conversation with officers on subjects unrelated to the unfolding criminal investigation. After the search warrant was executed, Hyche had a brief conversation with Officer Nickels that yielded the challenged statements. On these facts, we cannot conclude that Hyche's statement was involuntary. There is simply no evidence before us that any improper influence brought about Hyche's statements or that the circumstances of his brief conversation with Officer Nickels were coercive in any way, either physically or mentally.

[17]     Hyche contends that his intoxication and mental health issues rendered his statements involuntary. However, our supreme court has held that the "mere fact a statement is made by the defendant while under the influence of drugs, or that the defendant is mentally ill, does not render it inadmissible per se." *Pruitt*, 834 N.E.2d at 115. Rather, "[i]ntoxication, drug use and mental illness are only factors to be considered by the trier of fact in determining whether a statement was voluntary." *Id*.

[18] Regarding his claim of intoxication, we observe that "statements are inadmissible due to intoxication only when an accused is intoxicated to the point that he is unaware of what he is saying." *Wilkes*, 917 N.E.2d at 680. Any lesser degree of intoxication only goes to the weight the jury should give to the statement and not to its admissibility. *Id.* Although Hyche draws our attention to testimony provided by one officer at the motion to suppress hearing that he appeared to be intoxicated on marijuana, having glassy eyes and a "dopey" demeanor, Hyche does not argue on appeal that he was unaware of what he was saying when he spoke to Officer Nickels. (Tr. Vol. II, p. 32). In addition, the same officer who testified that she thought Hyche was intoxicated also testified that Hyche had no difficulty understanding or conversing with her. This is the evidence that favors the trial court's ruling, which is the only evidence we consider as part of our review. *See Pruitt*, 834 N.E.2d at 115. Other officers' testimony that Hyche did not appear to be intoxicated, conversed with them in a normal manner, and responded appropriately to them also supported the trial court's admission of the evidence at trial. *See Wilkes*, 917 N.E.2d at 680 (concluding that Wilkes's statements were voluntary where he did not argue on appeal that he was unaware of what he was saying when giving the statements and officers testified he did not appear intoxicated).

[19] We also find Hyche's argument based on his mental health to be unpersuasive because we agree with the State that there was inadequate evidence before the trial court from which it could have concluded that Hyche's mental health rendered his statements involuntary. Hyche relates in his statement of the facts

on appeal that he suffers from bipolar disorder and schizophrenia, citing to his presentence investigation report. However, there was no evidence put forth at either the motion to suppress hearing or at trial regarding Hyche's mental health diagnoses or, more importantly, how his mental health may have affected his ability to waive his *Miranda* rights or speak voluntarily to police. *See Wright*, 916 N.E.2d at 278 (rejecting Wright's claim that his unspecified mental illness rendered his confession involuntary where there was no evidence that his infirmities affected the voluntary nature of his statements). Contrary to Hyche's implications on appeal, the officers who sought his consent did not conclude that he had mental health issues that rendered him incapable of understanding. Rather, it was their standard procedure to cease attempting to acquire consent to search from a suspect if he gave any suggestion of reluctance or lack of understanding. Given the dearth of evidence before us regarding Hyche's mental health, we cannot conclude that the trial court abused its discretion when it admitted his statements at trial.

[20] Hyche's other contention that his statements were involuntary because he was subjected to interrogation while waiting one and one-half hours in handcuffs is equally without merit. The factual premise of Hyche's argument is flawed: Hyche was not questioned about the investigation during the one and one-half hours he waited for the search warrant to be procured; rather, Officer Nickels only spoke to him about the investigation briefly after the search warrant had been executed and they waited for Hyche's transport to jail. In addition, our supreme court has held that the fact a defendant was "handcuffed with his

hands behind his back when he was informed of his rights and when he gave his statement does not, standing alone, render that statement involuntary." *Wolfe v. State*, 426 N.E.2d 647, 654 (Ind. 1981) (upholding the voluntary nature of Wolfe's statement where he was handcuffed for an hour prior to making it). Accordingly, we find no abuse of the trial court's discretion in admitting Hyche's statements at trial.

# CONCLUSION

[21] Based on the foregoing, we conclude that the State proved beyond a reasonable doubt that Hyche's statements were voluntary and, therefore, the trial court did not abuse its discretion when it admitted those statements into evidence.

[22] Affirmed.

[23] Mathias, J. and Tavitas, J. concur