## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 04 2020, 11:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Aubrey J. Crist
Beasley & Gilkison, LLP
Muncie, Indiana

ATTORNEY FOR APPELLEE

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Garretson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 4, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-2750 <br><br> Appeal from the Wayne Circuit Court <br><br> The Honorable David Kolger, Judge <br><br> Trial Court Cause No. <br> 89C01-1805-F2-12 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Kenneth Garretson (Garretson), appeals following his conviction for possession of methamphetamine, a Level 4 felony, Ind. Code § 35-48-4-6.1(c), and his admission to being an habitual offender, I.C. § 35-50-2-8.

We affirm.

# ISSUES

Garretson presents the court with two issues, which we restate as the following:

(1) Whether the trial court abused its discretion when it admitted certain evidence; and

(2) Whether the trial court abused its discretion when it identified and weighed the mitigating circumstances at sentencing.

# FACTS AND PROCEDURAL HISTORY

On May 18, 2018, around 3:00 a.m., Office Ryan Gray (Officer Gray) of the Richmond Police Department was on patrol in his cruiser when he observed a red Geo Tracker driving straight toward him going the wrong way down South A Street, which had been reduced to one lane due to construction. Officer Gray activated his emergency lights, and the driver of the Geo Tracker, later identified as Michael Mengedoht (Mengedoht), pulled off into a parking lot to avoid hitting Officer Gray's vehicle. Officer Gray initiated a traffic stop. From his vantage point, Officer Gray could see Mengedoht and his passenger, Garretson, moving around in the front seat.

[5] Officer Gray approached Garretson's passenger-side window. Garretson would not make eye contact with Officer Gray, but he eventually rolled down his window. Officer Gray immediately detected the odor of raw marijuana, and he observed loose marijuana and rolling papers on Mengedoht's lap. Garretson provided Officer Gray with a name which the officer determined through a database check was false. Officer Gray removed Mengedoht and Garretson from the vehicle and searched it. Officer Gray discovered 15.81 grams of methamphetamine in a baggie hidden under the rubber boot cover protecting the vehicle's gear shift.

[6] After discovering the methamphetamine, Mengedoht and Garretson were separated and provided with their *Miranda* advisements. Mengedoht denied ownership of the methamphetamine and invoked his right to counsel. Officer Gray questioned Garretson, who initially denied ownership of the methamphetamine. After Officer Gray asked Garretson again about the methamphetamine, Garretson told the officer that it was his, he had hidden it under the rubber boot without Mengedoht's knowledge, and that they had travelled to Dayton, Ohio, earlier in the day to procure the methamphetamine. After Garretson had made these admissions, Officer Gray asked Garretson why he and Mengedoht were in Richmond so early in the morning. Garretson stated that he did not wish to say anything else.

[7] On May 18, 2018, the State filed an Information, charging Garretson with Level 2 felony dealing in methamphetamine and Level 4 felony possession of methamphetamine. The State also alleged that Garretson was an habitual

offender. On September 16, 2019, the trial court granted the State's motion to dismiss the dealing charge. Mengedoht had also been charged with methamphetamine possession and pleaded guilty to the charge as a Level 5 felony. As part of Mengedoht's testimony establishing the factual basis for his guilty plea, he stated that he and Garretson had jointly possessed the methamphetamine. Thereafter, in a deposition taken in preparation for Garretson's trial, Mengedoht stated that the methamphetamine was his. The State subsequently charged Mengedoht with perjury.

[8] On September 23, 2019, the trial court convened Garretson's two-day jury trial. Garretson did not object when Officer Gray testified about Garretson's admissions during the traffic stop that the methamphetamine was his. Garretson called Mengedoht as a witness, but Mengedoht invoked his Fifth Amendment right. Garretson had records from Mengedoht's criminal case admitted into evidence showing that Mengedoht had pleaded guilty to Level 5 felony methamphetamine possession. During closing argument, the deputy prosecutor argued that, even though Mengedoht had been convicted of possessing the methamphetamine found in the vehicle, two people could jointly possess the same drugs, and, thus, the jury could also convict Garretson for possessing the methamphetamine. During his closing statements, Garretson's counsel asked the jury several times why Mengedoht would have pleaded guilty if the methamphetamine was not his. The jury found Garretson guilty of methamphetamine possession, and Garretson admitted that he had the two

prior, unrelated felony convictions alleged by the State in the habitual offender Information.

[9] On October 24, 2019, the trial court held Garretson's sentencing hearing. Garretson expressed dissatisfaction with his counsel's performance, and Garretson's counsel moved to withdraw due to a breakdown of communication with his client. After Garretson's counsel confirmed that he had adequately prepared for the hearing and Garretson's claim that his counsel had withheld discovery materials from him was proven to be inaccurate, the trial court denied counsel's motion to withdraw. During his allocution, Garretson stated that at the time of his arrest his liver and kidneys were failing and that, as a result, he was "delusional" and in an "unstable state of mind[.]" (Transcript p. 213). Garretson denied telling Officer Gray that the methamphetamine found in the Geo Tracker belonged to him.

[10] The trial court found as mitigating circumstances that Garretson had admitted that he was an habitual offender and that his offense had not caused, nor had it threatened to cause, serious harm. The trial court accorded those mitigating circumstances minimal weight. The trial court found as an aggravating circumstance that Garretson had four prior felony convictions, three of which were for drug-related offenses, and that Garretson had failed to take advantage of the various forms of rehabilitative sentences that had been accorded him. The trial court found as additional aggravating circumstances that Garretson was on pre-trial release and probation when he committed the instant offense, he was affiliated with a gang, and he had incurred thirty-five major rule

violations in jail while awaiting trial. The trial court found that the aggravating circumstances "far, far, far exceed[ed]" the mitigators. (Tr. p. 227). The trial court sentenced Garretson to eight years for his possession of methamphetamine conviction, enhanced by twelve years for being an habitual offender.

Garretson now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Admission of Evidence*

### A. *Inculpatory Statements*

Although Garretson claims that his inculpatory statements to Officer Gray "should have been suppressed" because they were involuntary, this appeal occurs after trial, and, therefore, the issue is more properly framed as whether the trial court abused its discretion when it admitted those statements into evidence at trial. (Appellant's Br. p. 9). Decisions to admit or exclude evidence are within the sound discretion of the trial court. *Wright v. State*, 108 N.E.3d 307, 313 (Ind. 2018). Accordingly, we afford those decisions deference and will reverse only upon an abuse of the trial court's discretion and upon that error affects the defendant's substantial rights. *Id*. However, issues implicating constitutional questions, such as the voluntariness of a confession, are reviewed *de novo*. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). Upon review of a challenge to a trial court's admission of a confession, we do not reweigh the evidence, and we examine the record for substantial, probative evidence of

voluntariness. *Ringo v. State*, 736 N.E.2d 1209, 1211 (Ind. 2000). In addition, we consider only the evidence most favorable to the trial court's ruling. *Pruitt v. State*, 834 N.E.2d 90, 115 (Ind. 2005).

[13] We also observe that Garretson failed to object to the admission of the challenged evidence at trial. As a general rule, the failure to object at trial to the admission of evidence waives any claims of error unless fundamental error can be established. *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011). Fundamental error is a "very narrow" exception to the waiver rule and consists of error that "make[s] a fair trial impossible or constitute[s] a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Kelly v. State*, 122 N.E.3d 803, 805 (Ind. 2019).

[14] Before addressing the voluntariness of Garretson's statements, we pause to note that, in his Statement of the Issues and the caption of his Summary of the Arguments, Garretson claims that he was deprived of his right to the effective assistance of counsel. However, Garretson did not provide us with a standard of review for that claim, as necessitated by Indiana Appellate Rule 46(A)(8)(b), nor did he develop any substantive argument supporting that claim in the body of his brief. Failure to support an argument with cogent reasoning and citations to legal authority or the record results in waiver of a claim. Ind. Appellate Rule 46(A)(8)(a); *Griffith v. State*, 59 N.E.3d 947, 958 n.5 (Ind. 2016). We conclude that Garretson has waived his ineffective assistance of counsel claim.

[15] As to the substance of his argument, Garretson contends that his statements were "coerced." (Appellant's Br. p. 9). The Fifth Amendment's privilege against self-incrimination applies to the states through the Fourteenth Amendment. *Withrow v. Williams*, 507 U.S. 680, 689, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). In addition, Article I, Section 14 of our state constitution provides that "[n]o person, in any criminal prosecution, shall be compelled to testify against himself." Part of these constitutional protections is that, in order for a defendant's statement to be admissible at trial against him, it must have been given voluntarily. *Wright v. State*, 916 N.E.2d 269, 277 (Ind. Ct. App. 2009), *trans. denied*. Under state law, when a defendant challenges the voluntariness of his confession, the State must prove beyond a reasonable doubt that the confession was given voluntarily. *Jackson v. State*, 735 N.E.2d 1146, 1153 n.4 (Ind. 2000). The voluntariness of a defendant's statement is determined by examining the totality of the circumstances, including any violence, threats, promises or other improper influences brought to bear to bring about the statement. *Luckhart v. State*, 736 N.E.2d 227, 229 (Ind. 2000). Factors to be considered are "'any element of police coercion; the length, location, and continuity of the interrogation; and the maturity, education, physical condition, and mental health of the defendant.'" *Weisheit v. State*, 26 N.E.3d 3, 18 (Ind. 2015) (quoting *Wilkes v. State*, 917 N.E.2d 675, 680 (Ind. 2009)).

[16] Here, Garretson made his statements to Officer Gray during a brief conversation after having been provided with his *Miranda* advisements.

Garretson contends that his confession was involuntary because "he was under an immense amount of stress and pressure due to an ongoing issue with his mother and his own ongoing health problems" and because he was intoxicated. (Appellant's Br. p. 7). However, Garretson does not support either of these contentions with citations to the record. Our own review of the trial transcript and exhibits uncovered no evidence of Garretson's mental health, physical health, or intoxication that was introduced at trial.

[17] Garretson also contends that his confession was involuntary because Officer Gray continued to question him after he initially denied the methamphetamine belonged to him and after Mengedoht invoked his right to counsel. However, Garretson did not invoke his right to remain silent or indicate to Officer Gray in any way that he did not wish to continue to speak to the officer after he had initially denied ownership of the methamphetamine. The right to silence must be enunciated; it is not self-executing. *See Wilkes*, 917 N.E.2d at 682 ("An assertion of the *Miranda* right to remain silent must be clear and unequivocal."). In addition, Garretson does not explain how Mengedoht's invocation of his right to counsel made Garretson's statements involuntary, and we are unaware of any legal support for this contention. Accordingly, we conclude that there was no evidence before the trial court that indicated that Garretson's statements were involuntary and, therefore, Garretson has failed to establish fundamental error occurred.

### B. References to Mengedoht's Conviction

[18]     Garretson argues that the State impermissibly used evidence of Mengedoht's conviction to convict him.  Garretson contends that Mengedoht's "admission and conviction on the underlying possession of methamphetamine charge was brought up quite frequently throughout trial." (Appellant's Br. p. 11). However, the only evidence of Mengedoht's conviction introduced at trial was done so by Garretson himself to further his defense theory that only Mengedoht possessed the methamphetamine.  Contrary to Garretson's assertion on appeal, Officer Gray did not refer to Mengedoht's conviction in his direct testimony. Because it was Garretson who introduced the evidence he now challenges on appeal, we do not find his argument to be persuasive.  *See Kingery v. State,* 659 N.E.2d 490, 494 (Ind.1995) ("A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error.").

[19]     In this portion of his argument, Garretson also contends that the State improperly emphasized Mengedoht's conviction during closing statements when the deputy prosecutor argued to the jury that he and Mengedoht jointly possessed the methamphetamine.  Garretson did not object to this argument at trial, request an admonishment, or move for a mistrial, and so it is waived. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014).  On appeal, Garretson does not argue that the now-challenged references to Mengedoht's conviction constituted fundamental error.  In addition, Garretson does not provide us with a standard of review for a claim of prosecutorial misconduct, nor does he support his

argument with cogent reasoning or legal authority. We conclude, therefore, that Garretson has also waived this claim for failing to adequately develop his appellate argument. *See* App. R. 46(A)(8)(a). His waiver of the issue notwithstanding, the deputy prosecutor's argument was a correct statement of the law. *See Massey v. State*, 816 N.E.2d 979, 989 (Ind. Ct. App. 2004) (observing that possession of contraband by a defendant need not be exclusive and that it can be possessed jointly). The deputy prosecutor's argument was also in direct response to Garretson's defense theory and repeated arguments to the jury that Mengedoht would not have pleaded guilty to possession of methamphetamine if the drugs had not been his and, therefore, any claimed error was also invited. *See Kingery,* 659 N.E.2d at 490.

## II. *Sentencing*

[20] Garretson challenges the sentence imposed by the trial court. Although he cites our authority under the Indiana constitution and Indiana Appellate Rule 7(B) to independently review the inappropriateness of his sentence, he develops no substantive argument regarding the nature of his offenses and his character. Garretson also challenges his sentence on the ground that the trial court erred when it refused to allow his sentencing counsel to withdraw prior to his sentencing hearing. Garretson utterly fails to support this argument with any citation to legal authority or citations to the record. Given his failure to adequately support these appellate arguments with cogent reasoning and citations to legal authority or the record, Garretson has waived any claim regarding the inappropriateness of his sentence or the propriety of the trial

court's decision to refuse to allow his counsel to withdraw. *See* App. R. 46(A)(8)(a).

[21] The gravamen of Garretson's remaining argument regarding his sentence is that the trial court abused its discretion when it identified and weighed the mitigating circumstances. Under our current sentencing scheme, so long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. 868 N.E.2d at 490. One way that a trial court may abuse its discretion is when its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration. *Id*. at 490-91. However, because trial courts are no longer required to weigh aggravating and mitigating circumstances, the weight accorded to those circumstances is no longer subject to our review. *Id*. at 491.

[22] Garretson argues that the trial court should have accorded more weight to the fact that his offense did not cause, nor did it threaten to cause, serious harm. However, the trial court recognized this factor as mitigating, although it declined to extend it much significance for sentencing. We cannot credit Garretson's argument because we no longer review the relative weight assigned by a trial court to mitigating circumstances. *Id*.

Garretson also contends that the trial court improperly turned his cooperation with law enforcement from a mitigator into an aggravator and that more weight should have been accorded to his poor physical health. Our review of the trial court's sentencing statement revealed that the trial court considered and rejected both proposed mitigators. The trial court observed that Garretson initially provided Officer Gray with an inaccurate name and that, although Garretson stated during his allocution that he suffered from kidney and liver failure at the time of the offenses, he did not report any physical issues to the pre-sentence investigator. Therefore, we cannot say that these factors were clearly supported by the record or that the trial court abused its discretion by failing to identify them as mitigating circumstances. *Id*. at 490-91.

# CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it admitted the challenged evidence at trial or when it identified and weighed the mitigating circumstances at sentencing.

Affirmed.

Mathias, J. and Tavitas, J. concur